UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JCHON PERKINS,

      Plaintiff,                                      Hon. Janet T. Neff

v.                                                   Case No. 1:21-cv-179

TREK BICYCLE CORPORATION,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

On or about January 28, 2021, Plaintiff Jchon Perkins filed a complaint against Trek Bicycle Corporation in the Ingham County Circuit Court, alleging state-law claims of unfair competition, tortious interference with a business relationship, and restraint of trade. Invoking diversity jurisdiction, Trek removed the case to this Court on February 25, 2021, before it had even been served with the summons and complaint.

Presently before me is Trek's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and alternatively, pursuant to Rule 12(b)(5) for improper service. (ECF No. 14.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** the motion and dismiss the complaint with prejudice.

**I.   Background**[1]

Perkins is the owner of "Prize Trek," a mobile phone game app in which "the player is on a journey to find rewards." (ECF No. 1-1 at PageID.6–7.) Trek is a bicycle company and owner of

---

[1] The facts set forth herein are taken from Perkins's complaint.

a registered trademark incorporating the word "TREK." Perkins apparently filed an application with the United States Patent and Trademark Office (USPTO) to register "PRIZE TREK" as a trademark. On or about January 31, 2018, Trek filed an opposition to Perkins's application with the USPTO based on "likelihood of confusion." (*Id.* at PageID.6.) Perkins requested Trek to dismiss its opposition, as "PRIZE TREK" is a game app and Trek's products are bicycles. Trek refused to dismiss its opposition, but the parties discussed settling the matter pursuant to a written contract that would govern Perkins's use of the "PRIZE TREK" mark. The parties failed to reach an agreement. (*Id.*)

About a year after Perkins filed his application, the USPTO denied Trek's opposition. Although Perkins eventually successfully registered the "PRIZE TREK" mark, Trek's opposition effectively halted the development and market entrance of Perkins's game app. Perkins seeks damages for Trek's unfounded opposition to his trademark application. (*Id.*)

## II.  Motion to Dismiss for Failure to State a Claim

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating its assertions in a light most favorable to Plaintiff to determine whether it states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court has held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin

to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678-79.

Finally, because Perkins is proceeding pro se, the Court must construe his complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, this liberal pleading standard "is not without its limits, and does not 'abrogate basic pleading essentials in pro se suits.'" *Clark v. Johnston*, 413 F. App'x 804, 817 (6th Cir. 2011) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Stated differently, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001).

A.   **Unfair Competition**

In his first claim, Perkins alleges that Trek committed the tort of unfair competition through "trademark bullying, whereby one capitalizes on an owned trademark by monopolizing market share via removing competitors with competitive keywords." (ECF No. 1 at PageID.8.) Perkins asserts that, through its meritless opposition to his trademark application, Trek effectively stopped his business. (*Id.*)

Trek argues that Michigan law does not recognize a claim for unfair competition under circumstances such as these, where a trademark registrant merely seeks to protect its mark by opposing an application filed with the USPTO. Fraud is generally at the heart of unfair competition, "and the gist of the charge is that the public is so misled that plaintiff loses some trade by reason of the deception." *Revlon, Inc. v. Regal Pharmacy, Inc.*, 29 F.R.D. 169, 174 (E.D. Mich. 1961) (citing 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 14 at 247–48). The tort of unfair competition in Michigan "prohibits unfair and unethical trade practices that are

3

harmful to one's competitors or to the general public." *ATCO Indus., Inc. v. Sentek Corp.*, Nos. 232055, 235398, 2003 WL 21582962, at *3 (Mich. Ct. App. July 10, 2003) (per curiam). The Michigan Supreme Court has described the usual circumstances of unfair competition as follows:

> Unfair competition ordinarily consists in the simulation by one person, for the purpose of deceiving the public, of the name, symbols, or devices employed by a business rival, or the substitution of the goods or wares of one person for those of another, thus falsely inducing the purchase of his wares and thereby obtaining for himself the benefits properly belonging to his competitor. The rule is generally recognized that no one shall by imitation or unfair device induce the public to believe that the goods he offers for sale are the goods of another, and thereby appropriate to himself the value of the reputation which the other has acquired for his own product or merchandise.

*Schwannecke v. Genesee Coal & Ice Co.*, 262 Mich. 624, 627 (1933).

The act of "palming off"—passing off one's goods as those of another in order to trade on the other's business goodwill—is perhaps the most common form of deception encompassed in the domain of unfair competition. *See Clairol, Inc. v. Boston Disc. Ctr. of Berkley, Inc.*, 608 F.2d 1114, 1118 (6th Cir. 1979). Nonetheless, courts have not limited unfair competition to such claims. As noted in *Good Housekeeping Shop v. Smitter*, 254 Mich. 592, 596 (1931), "[e]ach case is determined upon its own facts and relief is based upon the principles of common business integrity." For example, in *Clairol, Inc.*, the Sixth Circuit held that the law of unfair competition in Michigan extended to preclude various retail and wholesale drug and cosmetic outlets from selling Clairol's professional salon products—which were not designed for home use and lacked proper warnings and labeling— to retail customers for home use because such activity exposed Clairol to potential criminal and civil liability. 608 F.2d at 1120–21. And although Trek contends that litigation, even if it is baseless, cannot support an unfair competition claim (ECF No. 15 at PageID.44 (citing *Mahindra & Mahindra Ltd. v. FCA US, LLC*, No. 18-cv-12645, at *3–4 (E.D. Mich. Apr. 2, 2019)), one judge in this district has concluded that bad faith use of litigation can, in some circumstances, support an unfair competition claim. *See Donnelly Corp. v. Reitter &*

4

*Schefenacker USA Ltd. P'ship*, No. 1:00-CV-751, 2002 WL 31418042, at *2, 4–5 (W.D. Mich. Aug. 13, 2002) (holding that the counter-defendant's initiation of baseless patent infringement action to enforce fraudulently-procured patents, coupled with statements to the counter-plaintiff's customers about the litigation and availability of competing products to replace the allegedly infringing products, stated an unfair competition claim).

Regardless of whether litigation, or the filing of an objection with the USPTO to a trademark application, could form the basis of unfair competition under *some circumstances*, Perkins's claim still fails. First, Perkins alleges no fact indicating that Trek sought to gain an unfair advantage on Perkins by asserting its own trademark rights. "An act is not improper if it is motivated by legitimate business reasons." *Letica Corp. v. Sweetheart Cup Co., Inc.*, 790 F. Supp. 702, 707 (E.D. Mich. 1992) (holding that competitor's assertion of trade dress rights and threat to initiate litigation could not support a claim for unfair competition). Perkins does not claim that Trek sought to substitute its products for his, to use his trademark, or to trade off his goodwill. Perkins alleges nothing more than that Trek sought to protect its rights. *See id.* ("A trademark owner is entitled to advise others of his trademark rights, to warn others that they or others are or may be infringing his rights, to inform others that he is seeking to enforce his rights though legal proceedings, and to threaten accused infringers and their customers with suit." (quoting *Leopold v. Henry I. Siegel Co.*, No. 86 Civ. 63, 1987 WL 5373, at *4 (S.D.N.Y. Jan. 5, 1987))). Second, Perkins alleges no fact suggesting that Trek duped or misled the public, or intended to do so, in any way. This element of an unfair competition claim is completely absent from the complaint. In fact, Trek's opposition to Perkins's trademark application could not have misled the public in any way. Finally, this claim fails because, by Perkins's own admission, he and Trek are not competitors. *See Timber Prods. Inspection, Inc. v. Coastal Container Corp.*, 827 F. Supp. 2d 819,

5

833 (W.D. Mich. 2011) (holding that unfair competition claim failed as the parties did not compete against one another) (citing *Boron Oil Co. v. Callanan*, 50 Mich. App. 580 (1973)).[2] Therefore, this claim fails and should be dismissed.

### B. Tortious Interference

Perkins's second claim is titled "tortious interference." He alleges that he "was establishing a business relationship with the public," from which he "reasonably expected to benefit;" Trek "was aware of this relationship;" Trek "intentionally interfered with this relationship;" the interference was improper; and Trek's "action disrupted & terminated this relationship." (ECF No. 1-1 at PageID.8.)

Michigan recognizes two separate causes of action based on tortious interference, tortious interference with a contract and tortious interference with a business relationship or expectancy. *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 89 (2005). Because Perkins does not allege the existence of a contract, his claim appears to rely on the business expectancy cause of action. The elements of such claim are: (1) the existence of either a valid business relationship or the expectancy of such relationship; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) intentional interference by the defendant that causes the breach or termination of the relationship or expectancy; and (4) resultant damages to the plaintiff. *Id.* at 90; *see also Mino v. Clio Sch. Dist.*, 255 Mich. App. 60, 78 (2003). The "intentional interference" must actually be improper, meaning it was either (1) the intentional doing of per se wrongful act or (2) the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiff's business relationship. *Advocacy Org. for Patients &*

---

[2] The *Timber Products* court noted that *Boron Oil* identified an exception in which an unfair competition claim may proceed where the parties do not compete. The exception arises where the defendant attempts to pirate the plaintiff's outstanding and widely known name. *See Boron Oil*, 50 Mich. App. at 583. This exception clearly is not applicable here.

*Providers v. Auto Club Ins. Ass'n.*, 257 Mich. App. 365, 383 (2003); *Feldman v. Green*, 138 Mich. App. 360, 369 (1984). An act is wrongful per se if it is "inherently wrongful or one that is never justified under any circumstances." *Formall, Inc. v. Community Nat'l Bank of Pontiac*, 166 Mich. App. 772, 780 (1988). To establish that a lawful act was done "with malice and unjustified in law," the plaintiff must show specific, affirmative acts that corroborate the defendant's improper motive to interfere with the plaintiff's business relationship. *Feldman*, 138 Mich. App. at 369–70. Perkins's tortious interference claim fails for a number of reasons.

  First, to plead this claim properly, Perkins must show that he had "more than a 'subjective expectation of entering into a [business] relationship.'" *Saab Auto. AB v. General Motors Co.*, 953 F. Supp. 2d 782, 789 (E.D. Mich. 2013) (quoting *Compuware Corp. v. International Bus. Machs.*, 259 F. Supp. 2d 597, 604 (E.D. Mich. 2002)). The plaintiff must show "a reasonable likelihood or probability [of an expectation], not mere wishful thinking." *Cedroni Ass'n, Inc. v. Tomblinson, Harburn Assocs., Architects & Planners, Inc.*, 492 Mich. 40, 45 (2012) (internal quotation marks omitted). Perkins's allegation that he was establishing a relationship with the public is too conclusory and vague to establish anything more than a possibility of a business relationship with members of the public at large. *See Law Enf't Officers Sec. Unions v. Int'l Unions, Sec. Police & Fire Prof'ls of Am.*, No. 20-12544, 2021 WL 3667220, at *5 (E.D. Mich. Aug. 18, 2021) (holding that the plaintiffs' allegation that the defendants interfered with "potential local union members" described nothing more than the plaintiffs' "subjective hopes that [they] would gain new members"); *Lown Cos., LLC v. Piggy Paint, LLC*, No. 1:11-cv-911, 2012 WL 3277188, at *4 (W.D. Mich. Aug. 9, 2012) (holding that alleged business expectation with "fans" of a Facebook page was "too indefinite to form the basis of an actual expectation of business").

7

Second, Perkins's allegation that Trek was aware of the alleged relationship or expectancy is nothing more than a legal conclusion that fails to satisfy the *Twombly*/*Iqbal* standard. Perkins fails to allege how Trek was aware of a specific business relationship or expectancy that Perkins had.

Finally, Perkins fails to allege intentional interference that was improper. Trek's assertion of its trademark rights before the USPTO was not wrongful per se, and he fails to allege any fact showing that its assertion of its trademark rights—a lawful act—was done with malice. Protecting the value of one's trademark is certainly a legitimate act. "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Mino*, 255 Mich. App. at 78. As expressed in *Marvel Enterprises, Inc. v. Spiderboy International, Inc.*, No. 2:04CV244FTM33DNF, 2005 WL 1944660 (M.D. Fla. Aug. 12, 2005), opposing a trademark registration application under these circumstances is not improper:

> In this case, Defendants do not allege an actual business relationship in which they have legal rights that were unjustifiably interfered with by the Plaintiffs. Plaintiffs had a right to file an opposition to the trademark name. There is no indication that in doing so, Plaintiffs intentionally and unjustifiably interfered with a business relationship of the Defendants. At most, Plaintiffs [sic] filing of the Notice of Opposition was in Plaintiffs' business interest.

*Id.* at *2. Therefore, Perkins fails to state a tortious interference claim.

### C.    Restraint of Trade

Perkins's final claim is titled "Restraint of Trade." His sole substantive allegation is that Trek's "actions prohibited Plaintiff from conducting business as normal." (ECF No. 1-1 at PageID.9.) This bare-bones allegation leaves much to the imagination, but it is not for the Court to craft Perkins's claims for him. Essentially, his allegation is that Trek's filing of its opposition in the USPTO precluded him from conducting his business.

8

Trek surmises that Perkins may be asserting a claim under Section 2 of the Sherman Act. To establish such a claim, however, a plaintiff must allege the following: "(1) the possession of monopoly power in a relevant market; and (2) the willful acquisition, maintenance, or use of that power by anti-competitive or exclusionary means as opposed to 'growth or development resulting from a superior product, business acumen, or historic accident.'" *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 782 (6th Cir. 2002) (citations omitted). Perkins's complaint contains no such allegations. Perkins does not even allege that Trek has monopoly power in the market in which it competes. While Perkins references a trademark owner's "monopolizing market share via removing competitors with competitive keywords" in his unfair competition claim (ECF No. 1-1 at PageID.8), he fails to allege the relevant market. As noted, Perkins admits that Trek is in the bicycle market, while he is in the gaming app market. It is thus difficult to comprehend how Trek's alleged interference with Perkins's conduct of his business in the gaming market could have led to Trek acquiring monopoly power in its own market. Moreover, as Trek sets forth in its brief, a trademark owner does not violate the Sherman Act by enforcing its trademark rights. *See, e.g.*, *Scooter Store, Inc. v. SpinLife.com, LLC*, 777 F. Supp. 2d 1102, 1114 (S.D. Ohio 2011). For these reasons, Perkins' restraint of trade claim fails to state a claim.[3]

In sum, Perkins's complaint is that Trek's opposition to his trademark application was unreasonable and unfair, or even frivolous, given that the parties' products are not even closely related. Perkins may be correct that there would be no likelihood of confusion, and it may be that

---

[3] In his amended reply (ECF No. 26), Perkins cites various sections of the Michigan Consumer Protection Act (MCPA), Mich. Comp. Laws § 445.901 *et seq.* Perkins does not allege a claim under the MCPA, and it is not clear from the provisions he cites how Trek's opposition to his trademark application could have violated the MCPA. Similarly, Perkins's reliance on Mich. Comp. Laws § 445.761 is misplaced, as the statute was repealed effective March 29, 1985.

Trek was overzealous in seeking to protect its trademark. But for the reasons cited above, the law does not provide him a cause of action under the facts he alleges.

## II. Motion to Dismiss for Lack of Proper Service

Trek also moves to dismiss on the basis that Perkins failed to properly serve the summons and complaint on Trek. At the time Trek removed the case, it had not been properly served with the summons and complaint. (ECF No. 1 at PageID.2.) On January 30, 2021, Perkins emailed Trek's president asking about where and to whom he should send the summons and complaint. On February 1, 2021, a Trek customer care manager emailed Perkins, advising him that he should serve the summons and complaint "through proper legal channels" at Trek's legal department in Waterloo, Wisconsin. (ECF No. 15-1 at PageID.57–58.) Rather than following that direction, Perkins emailed the summons and complaint to Trek's outside counsel in Michigan, who informed Perkins that service by email was ineffective. (ECF No. 15-2 at PageID.60.) Thereafter, Perkins sent the summons and complaint by certified mail to Trek's counsel in Michigan and to Trek's corporate headquarters in Wisconsin. (ECF No. 9.)

Pursuant to Rule 4(h) of the Federal Rules of Civil Procedure, a domestic or foreign corporation may be served:

>   (A) in the manner prescribed in Rule 4(e)(1) . . . ; or
>
>   (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h)(1). Rule 4(e)(1) allows for service pursuant to the law of the state in which the district court is located.

Courts have interpreted the term "delivering" in Rule 4(h)(1) as requiring personal service on the appropriate agent. *See Christian v. Federal Home Loan Mortg.* Corp., No. 13-13795, 2016

10

WL 1640459, at *2 (E.D. Mich. Apr. 26, 2016) ("Notably, courts have interpreted 'deliver[y]' under [Rule 4 of the Federal Rules of Civil Procedure] as requiring personal service on the appropriate agent.") (citing *Etherly v. Rehabitat Sys.*, No. 13-11360, 2013 WL 3946079, at *5 (E.D. Mich. July 31, 2013); *Dyer v. Wal-Mart Stores, Inc.*, 318 F. App'x 843, 844 (11th Cir. 2009); *Larsen v. Mayo Med. Ctr.*, 218 F.3d 863, 868 (8th Cir. 2000)); *see also Collett v. Kennedy, Koontz & Farinash*, No. 3:14-CV-552, 2015 WL 7254301, at *4 (E.D. Tenn. Aug. 14, 2015).

Because Perkins did not personally serve the summons and complaint on Trek's registered agent, service was improper under Rule 4(h)(1).[4] For the same reason, service was improper under Michigan Court Rule 2.105(D)(1) and (2), as personal service is required under both subsections. *See Sutton v. Mountain High Investments, LLC*, No. 20-cv-11656, 2021 WL 859046, at *5 (E.D. Mich. Mar. 8, 2021) (observing that the plaintiff's "failure to allege that the service by certified mail was accompanied by personal service 'on a director, trustee, or person in charge of an office or business establishment' defeats her argument that Defendant was properly served"); *Williams v. Fannie Mae*, No. 332274, 2017 WL 2562608, at *2 (Mich. Ct. App. June 13, 2017) (noting that "serving a summons and a copy of the complaint on an officer" under Rule 2.105(D)(1) "means 'personal' service"). Because personal service is required under both the Federal Rules of Civil Procedure and the Michigan Court Rules, Perkins's attempt to serve Trek by solely by certified mail was insufficient to accomplish proper service.

A court may construe a motion to dismiss for ineffective service of process as a motion to quash service. *See Young's Trading Co. v. Fancy Import, Inc.*, 222 F.R.D. 341, 343 (W.D. Tenn.

---

[4] Perkins cites *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007), as authority that would permit this Court to grant him leeway on proper service because he is proceeding pro se. The statement Perkins quotes, "the reviewing court may grant the *pro se* litigant leeway on procedural matters, such as pleading requirements," *id.* at 1356, deals only with pleadings and has nothing to do with service issues.

11

2004) (stating that "[w]here service is ineffective, a court has discretion to either dismiss the action or quash service and retain the case"). The Sixth Circuit has expressed a preference to treat the first motion for improper service as a motion to quash. "[I]f the first service of process is ineffective, a motion to dismiss should not be granted, but the case should be retained for proper service later." *Stern v. Beer*, 200 F.2d 794, 795 (6th Cir. 1952). Here, the appropriate remedy would be to treat the motion to dismiss as a motion to quash and afford Perkins another opportunity to attempt valid service. However, if the Court adopts the above recommendation to dismiss the complaint pursuant to Rule 12(b)(6), the service of process issue will be moot.

### III.  Conclusion

For the foregoing reasons, I recommend that the Court **grant** Trek's motion to dismiss pursuant to Rule 12(b)(6) (ECF No. 14) and **dismiss** the action.

Dated: October 5, 2021               /s/ Sally J. Berens
                                     SALLY J. BERENS
                                     U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).